IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 5, 2006

## RONALD IAN QUIMBY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Giles County**
**No. 12255     Stella Hargrove, Judge**

_____

**No. M2006-00918-CCA-R3-PC - Filed May 31, 2007**

_____

The petitioner, Ronald Ian Quimby, was found guilty of incest (Class C felony) by a Giles County jury on November 12, 2003. On November 12, 2004, he agreed to a five-year sentence in the Department of Correction as a Range I, standard offender. On that day, the petitioner also pled guilty to five additional charges of incest, each carrying a five-year sentence, to be served consecutively for a total effective sentence of thirty years. On appeal, the petitioner contends that trial counsel was ineffective and argues that: (1) he did not knowingly, voluntarily, or intelligently waive his right to appeal his conviction; (2) counsel was not adequately prepared for trial; and (3) counsel failed to advise him regarding sentencing. After careful review, we conclude that counsel rendered effective assistance, and we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Ronald Ian Quimby.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Christi Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was charged by the Giles County Grand Jury with twelve counts of incest involving his daughter. Following appointment of counsel, the twelve counts were severed to be tried separately. Following a jury trial on the first count of incest, the petitioner was found guilty of the indicted offense. In lieu of the trial court conducting a sentencing hearing, the petitioner later agreed to a five-year sentence as a Range I, standard offender. He entered this agreement on November 12, 2004, and simultaneously pled guilty to five other charges of incest in exchange for five additional sentences of five years, to run consecutively, resulting in a total effective sentence

of thirty years. As a condition of the plea, the remaining six charges were dismissed. Another condition of the petitioner's plea resulted in a waiver of his right to appeal the first conviction.

The petitioner filed a petition for post-conviction relief on November 16, 2005. The initial petition was amended on January 30, 2006, and again on February 21, 2006. A post-conviction hearing was held on April 7, 2006. During the hearing, four witnesses testified regarding their involvement in the underlying trial of the petitioner.

The petitioner testified during the post-conviction hearing and said that counsel never advised him of his right to file a motion for new trial or to appeal his conviction. He said that counsel told him to "concentrate" on the additional charges and to "forget" about the first trial. He testified that he had venue and alibi issues that counsel did not fully develop at trial and contended that the issues should have been more developed. The petitioner specifically stated that his ex-wife should have been called as a witness because she could have verified that he was not in Tennessee at the time of the first alleged incident. He contended that the State of Tennessee did not have jurisdiction because he was in Virginia Beach with his family at the time of the first incident.

The petitioner further testified that, prior to trial, counsel met with him only two times at the jail for approximately fifteen minutes on each occasion. He said that counsel filed the motion to sever the counts of the indictment prior to meeting with him the first time. He acknowledged that he would have agreed with the severance but felt he should have been allowed to make that choice.

The petitioner testified that he did not know the potential sentence he was facing and did not understand the agreed-upon sentence. He said that he expected a shorter sentence. He contended that he and counsel did not discuss release eligibility or how a judge might make a sentencing determination. The petitioner testified that, when he asked counsel about sentencing, counsel threatened to withdraw so the petitioner did not broach the subject again. Instead, for fear of losing his attorney, he agreed to the thirty-year sentence. He alleged that he took the plea offer because he was not aware that he could appeal the first conviction. The petitioner said counsel told him that the trial court would determine the length and manner of a sentence if he proceeded to trial.

The petitioner said that after he received a copy of the State's witness list from counsel, he provided counsel with a profile of each witness but he said they did not specifically discuss the witnesses. He claimed that the officials at the jail intercepted and reviewed mail between him and counsel. Specifically, he claimed that he kept the birth certificates for the victim and their child in his wallet. He testified that he told no one else about this; yet, they were introduced by the State at trial. He said that he told counsel about these issues, but he did not respond to his claims.

The petitioner was a truck driver and planned to use his driving logs to establish his whereabouts for each of the alleged incidents. He said that counsel told him not to worry about the logs until a later time. The petitioner claimed that counsel also ignored telephone records and alibi witnesses. He maintained that a friend, Mark Dearth, took all of his property from his truck,

including his driving logs. The petitioner said that, if he had known about his right to appeal the first conviction, he would not have said he was guilty.

On cross-examination, he acknowledged that he told the trial court he was happy with counsel's representation because he did not want to make the court mad or to lose another attorney. He said he decided to plead guilty because Lieutenant Miller told him he would get fifty or sixty years after a trial. He said the officer told him this while everyone else was at lunch and while he was outside the presence of his counsel. He testified that he was not guilty of incest and claimed he pled guilty to something he had not done for the benefit of the victim and so the matter would be resolved.

The petitioner acknowledged that counsel questioned the victim at trial regarding her whereabouts at the time of the incident underlying the first conviction. She admitted that she was in Virginia Beach around that time. He said that the victim testified that the first incident, during which he impregnated her, occurred in a bedroom at the family home in Giles County. He further contended that counsel should have called his ex-wife to testify.

The next witness was Lieutenant Miller Meadows of the Giles County Sheriff's Department. He testified that the department policy is to open correspondence from an attorney to their client in the presence of the inmate. He said they give the inmate the mail and then destroy the envelope. He testified that no one affiliated with the Sheriff's Department reads mail that is subject to attorney-client privilege.

Next, Detective Michael Chapman with the Giles County Sheriff's Department testified that he was the lead investigator in the incest case against the petitioner. He said that jail officials discovered the two birth certificates in the petitioner's wallet when they inventoried its contents. He said that he turned them over to the district attorney's office because the petitioner was being held on incest charges and he felt they might be relevant to the case.

The final witness to testify during the post-conviction hearing was the petitioner's trial counsel. He said that, at the time of the sentencing hearing, he had already drafted a motion for new trial and for an appeal. The petitioner told him that he wanted to plead guilty so that he could move on and "stop hurting" the victim. Part of the offer was that the conviction in Count one of the indictment remain intact. The agreement also waived a motion for new trial and an appeal. Counsel said that he informed the petitioner of these aspects of the agreement and that the petitioner was aware of those conditions.

He said that he met with the petitioner after he received the discovery materials from the State and that they discussed the motion to sever all counts of the indictment. He testified that he explained his strategy for severing the charges. Counsel believed that the petitioner would likely be convicted of Count one, based on the victim's testimony and the incriminating letters written to her by the petitioner. He said that, by severing the charges, the State would be forced to negotiate a plea agreement because they would not want to undertake twelve separate trials. Counsel met with the

petitioner four or five times at the jail and on several additional occasions at the courthouse. Counsel acknowledged that the petitioner had several alibi witnesses for the other counts of the indictment but that he had none for the incident in Count one. Counsel conveyed to the State that there were alibi witnesses on five to six of the other counts. He said that all the witnesses suggested by the petitioner were relevant to Counts two through twelve but were not relevant to Count one. He said that the other charges were not ready for trial so he had not investigated the witnesses any further.

As for the venue issue, he said the victim was impregnated on or about April 18, 2000, in Virginia Beach. Counsel discussed with the petitioner his strategy for bringing out the evidence that he was not in Tennessee at the time of the incident. He defended his strategy of not calling the petitioner's ex-wife for two reasons: 1) The victim admitted on cross-examination that they were in Virginia at the time she was impregnated by the defendant; and 2) Counsel knew the ex-wife was extremely hostile toward his client, and the petitioner had told him she was not credible. For strategic reasons, he did not call her as a witness because he did not know what she would say.

Counsel testified that, after the trial, he received a letter from the petitioner in which he expressed dissatisfaction regarding counsel's failure to call the petitioner's wife as a witness. He advised the petitioner that if he was unhappy with how he had handled the trial, he would seek to withdraw; however, the petitioner declined.

Counsel said that his only defense to Count one was to attack the witness' credibility and, particularly, that the family was not in Tennessee on the alleged date. He testified that the State had DNA evidence to show that the petitioner was the biological father of the victim's child. With this knowledge, he unsuccessfully filed a motion to suppress the DNA evidence on Fourth Amendment grounds. He anticipated a conviction in Count one but felt more confident about the other charges.

Counsel testified that he discussed sentencing with the petitioner. He informed the petitioner that he could be sentenced as a Range II offender and that, because incest was a Class C felony, he could face six to ten years on each count, with a release eligibility of thirty-five percent.

Counsel defended his omission of the log books because he said they were not relevant to the first trial. He further said that, because the incidents allegedly occurred on Friday and Saturday nights, he did not think the logs would be helpful because the petitioner was always home on those nights. Counsel testified that he ceased preparing for the remaining counts of the indictment when the petitioner said he wanted to plead guilty. Counsel explained the terms of the plea agreement to the petitioner and made him aware of the consequences. He said it was possible that the jail officials might have taken the birth certificates from the petitioner's wallet but believed it had nothing to do with his defense and did not pursue it. Finally, he testified that the petitioner knew what he was doing when he pled guilty, particularly because the petitioner initiated the guilty plea.

<u>Analysis</u>

The petitioner contends that counsel rendered ineffective assistance and specifically argues that his representation was deficient in three areas: 1) He failed to advise the petitioner of his rights regarding direct appeal and failed to file a motion for new trial and notice of appeal; 2) He failed to discuss with the petitioner the availability of both an alibi defense and a defense regarding the venue; and 3) Counsel failed to adequately explain the sentencing process and options available to the petitioner. The State argues that counsel was effective and that the petitioner's issues are without merit because he failed to show that counsel's representation was deficient or that he was prejudiced by counsel's representation. We will address each issue separately.

This court reviews a claim of ineffective assistance of counsel under the standards of <u>Baxter v. Rose</u>, 523 S.W.2d 930 (Tenn. 1975), and <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). The petitioner has the burden to prove that: (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064; <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996); <u>Butler v. State</u>, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. <u>Goad</u>, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. <u>Baxter</u>, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065; <u>State v. Honeycutt</u>, 54 S.W.3d 762, 767 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad</u>, 938 S.W.2d at 369 (citing <u>Strickland</u>, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Nichols v. State</u>, 90 S.W.3d 576, 587 (Tenn. 2002)(citing <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones, based upon adequate preparation. <u>Henley v. State</u>, 960 S.W.2d 572, 579 (Tenn. 1997); <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982).

First, the petitioner argues that counsel should have informed him of his right to appeal the first conviction and contends that he would not have entered guilty pleas on the additional five counts if he had known he could have appealed. Counsel testified that he had prepared and was ready to file a notice of appeal and motion for new trial. The post-conviction court found the transcript of the guilty plea acceptance hearing reflected that the defendant said he was aware that, once his plea was entered, he waived the right to any further trials, hearings, and appellate review. The post-conviction court also found that counsel conveyed to the petitioner that the plea agreement provided no appeal and that counsel told the petitioner, "We won't do anything more on Count One." The post-conviction court did not find the petitioner's testimony, that he accepted the offer because he did not know he had a right to appeal, to be credible and was satisfied that the petitioner knew appellate review was unavailable to him in regards to his conviction. The record supports the conclusion that the petitioner knew his plea would end the appeal of his conviction. At the plea hearing, the petitioner indicated that he understood there would be no appellate review of his conviction, and counsel testified that part of the plea offer was that there would be no motion for a new trial or an appeal. The record reflects that the petitioner was aware of the consequences of his plea agreement and, further, that he has failed to demonstrate that counsel's performance was deficient. Therefore, he has not met his burden of showing ineffective assistance of counsel as to this claim.

Next, the petitioner contends that counsel did not adequately discuss potential strategies with him. Specifically, he submits that counsel did not meet with him to discuss a severance of the charges prior to filing the severance motion, and he argues that counsel was ineffective in pursuing the possible alibi defense and venue issues related to the trial. The State argues that these issues are without merit. We will address these issues separately.

The severance issue is without merit. The petitioner admitted during the post-conviction hearing that he wanted each count severed and tried separately. Counsel testified, contrary to the testimony of the petitioner, that he did meet with the petitioner prior to filing the motion. He explained his strategy for filing the motion to sever to the petitioner and, after their discussion, counsel filed the motion. In order to gain relief under an allegation of ineffective assistance of counsel, a petitioner must show that he or she was prejudiced by counsel's actions or tactics. Here, because the petitioner acknowledged that he would have wanted the counts separated, he is not able to show that he was prejudiced by counsel's representation. This issue is without merit.

The petitioner also argues that counsel was ineffective for failing to sufficiently present his alibi defense and venue issues during trial. Specifically, he contends that counsel should have questioned the victim more regarding the location of their sexual encounter to show that it was in Virginia Beach, Virginia, as opposed to Tennessee. He also argues that counsel should have called the petitioner's ex-wife to testify that they were all in Virginia at the time, to support his defense that venue was not proper in Tennessee.

The post-conviction court found that counsel did elicit testimony from the victim that she was in Virginia on the date of the alleged incident. Counsel testified that he did not call the petitioner's

ex-wife for two reasons: 1) She was a hostile witness to the petitioner; and 2) Counsel did not know what she would say. During the post-conviction hearing, he testified that the petitioner had previously said that his ex-wife was a liar and counsel decided as a matter of strategy not to call her. Counsel had already elicited from the victim the testimony that counsel felt he needed with respect to her admission that the sexual encounter took place in another state. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley, 960 S.W.2d at 579; Hellard, 629 S.W.2d at 9. Our review of the transcripts from both the trial and the post-conviction hearing reflect that counsel was adequately prepared, and we conclude that his employment of this strategy was sound and did not amount to unreasonable representation. The record reflects that counsel's investigation of the petitioner's alibis resulted in six of the remaining eleven counts being dismissed as part of the plea agreement. The record supports the post-conviction court's holding that counsel's representation, in regards to the alibi and venue issues presented, was not ineffective.

Further, when a petitioner contends that counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner during the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). The petitioner did not call his ex-wife to testify during his post-conviction hearing nor did he show what counsel should have asked the victim or what evidence would have come to light had he persisted in questioning the victim. Failure to call this witness or to demonstrate additional evidence that would have surfaced have caused the petitioner to fail to carry his burden of establishing deficient performance or to establish that he was prejudiced by counsel.

Next, the petitioner argues that he was not adequately informed by counsel with regard to sentencing. He testified that he believed he would only have to serve one five-year sentence even though he agreed to a thirty-year, Range I sentence. He claims that counsel did not discuss release eligibility dates or his options with regard to sentencing. The post-conviction court found that the guilty plea hearing transcript reflected that the petitioner understood the circumstances of his plea agreement. Counsel testified that he and the petitioner discussed that he could be sentenced as a Range II, standard offender and that he would be subject to a potential sentence of six to ten years, at thirty-five percent, for each conviction. The transcript of the plea acceptance hearing reflects that the trial court specifically informed the petitioner that the agreement called for six consecutive five-year sentences and repeated that he was receiving an effective thirty-year sentence for six convictions of incest. The transcript reflects that the petitioner indicated that he understood, that he had no questions of the court, and that he said he wanted the court to accept the plea agreement. Further, he said that he had plenty of time to discuss the agreement with counsel, that he had no complaints with counsel, and that he called him "a very good lawyer." We conclude that the petitioner was well informed about his sentences. The petitioner has not met his burden of showing that counsel was ineffective in instructing him about his sentencing issues.

At the conclusion of his brief, the petitioner has included a list of additional statements that counsel was ineffective. These reasons were all mentioned during the post-conviction hearing and include the following: counsel did not give input regarding the petitioner's issues with his mail while he was in jail; the State was biased in handling thefts alleged by the petitioner; and the petitioner received no explanation for the confiscation of his personal property at the jail and its subsequent use at trial. He alleges that these issues fall within the category of "counsel's failure to adequately and promptly discuss strategies and tactics with [the p]etitioner." However, he does not demonstrate how trial counsel was ineffective. Counsel testified at the post-conviction hearing that the items allegedly stolen from the petitioner were his driving logs and that these items were not material to the petitioner's case for Count one. Police officials testified that they did not handle the investigation into the theft because of the ongoing criminal investigation and that they turned the matter over to the Tennessee Bureau of Investigation. Police also testified that no materials subject to the attorney-client privilege were viewed by jail officials. Police testified that the materials confiscated by the police and used as evidence at trial, the birth certificates of the victim and the child of the victim and petitioner, were discovered in the petitioner's wallet when it was inventoried after his arrest. These items were turned over to the district attorney's office because it is standard procedure to turn evidence over when it might be used in the investigation. These issues lack merit because they fail to show that counsel was ineffective.

Conclusion

Based on the foregoing and the record as a whole, we conclude that the post-conviction court properly found that the petitioner received effective assistance of counsel.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-